**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:15-cv-23856-UU

MONICA AINHORN MORRISON,

Plaintiff,

v.

UNIVERSITY OF MIAMI, *et al.*,

Defendants.
_______________________________________/

**OMNIBUS ORDER**

THIS CAUSE comes before the Court upon University of Miami's Motion to Dismiss (D.E. 32), Motion to Dismiss the Complaint by Defendant Edward Erwin (D.E. 33), and Defendant, Colin McGinn's Motion to Dismiss Counts X, XI, XII, and XIII of Complaint (D.E. 35).

THE COURT has considered the Motions, the pertinent portions of the record and is otherwise fully advised in the premises.

**BACKGROUND**

The following facts are taken from Plaintiff's Complaint. D.E. 1. Plaintiff, Michelle Morrison ("Plaintiff"), is an individual who was a student and employee at the University of Miami during the relevant time period. *Id.* ¶ 5. Defendant, University of Miami ("University"), is a private educational institution and non-profit corporation that receives federal funding and financial assistance. *Id.* ¶ 6. Defendant, Colin McGinn ("McGinn"), was employed at the University in the Department of Philosophy. *Id.* ¶ 8. Defendant, Edwin Erwin ("Erwin"), was also employed at the University in the Department of Philosophy. *Id.* ¶ 9.

Plaintiff began to attend the University in the fall of 2011 as a Ph.D. student in the Philosophy Department. *Id.* ¶ 16. During her first semester at the University, she was enrolled in a class taught by McGinn. *Id.* ¶ 17. In November 2011, McGinn approached Plaintiff and asked her to come to his office to discuss a topic raised in his class. *Id.* ¶ 19. After this meeting, McGinn e-mailed Plaintiff to discuss philosophy topics and insisted that he and Plaintiff meet on a regular basis to discuss class-related topics. *Id.* ¶ 20. Plaintiff agreed. *Id.* During their meetings, McGinn encouraged Plaintiff to hold and touch his hand. *Id.* ¶ 21. Plaintiff became uncomfortable with this ritual. *Id.* ¶ 22. On December 12, 2011, McGinn asked Plaintiff to serve as his Research Assistant ("RA") for the spring 2012 semester. *Id.* ¶ 23. Plaintiff accepted the position and was paid a $4,000 stipend by the University. *Id.*

After Plaintiff accepted the RA position, McGinn began to send Plaintiff sexually explicit e-mails. *Id.* ¶¶ 25, 30-32. In December 2011, before Plaintiff left campus for winter break, McGinn insisted that Plaintiff provide him with her personal cell phone number to allow him to call her over winter break. *Id.* ¶ 26. Throughout the winter break, McGinn called Plaintiff on a daily basis, sent her extensive text messages and e-mails describing their "relationship," and demanded that Plaintiff send him photographs of herself. *Id.* ¶ 27. Plaintiff stopped responding to his e-mails for several days. *Id.* ¶ 28. When McGinn realized Plaintiff stopped responding, he called her phone and left her multiple angry voice messages. *Id.* ¶ 29.

As McGinn's RA, Plaintiff was required to meet with McGinn in his office every Tuesday and Thursday prior to the lecture. *Id.* ¶ 34. During each meeting, McGinn demanded that Plaintiff allow him to hold her hand as a part of a "hand ritual." *Id.* ¶ 35. McGinn then insisted that Plaintiff allow him to hold her feet, and when she complied with his request, McGinn kissed Plaintiff's foot. *Id.* ¶ 36. Defendant continued to send multiple e-mails and text

messages in January 2012. *Id.* ¶¶ 37-38. One week after McGinn first kissed Plaintiff's foot, he demanded to do so a second time, and Plaintiff acceded. *Id.* ¶ 40. Plaintiff felt trapped and frightened by McGinn's requests, but she complied with the requests and appeased McGinn by responding to his e-mails with questions about work or philosophy. *Id.* ¶ 43. Between January 27 and 28, 2012, McGinn sent Plaintiff several e-mails describing an erection and his sexual feelings for her feet. *Id.* ¶¶ 44-46. McGinn continued to make sexual advances toward Plaintiff in February and March 2012. *Id.* ¶¶ 49-52. McGinn demanded that Plaintiff eat lunch and dinner with him on a regular basis. *Id.* ¶ 53. Plaintiff objected, but McGinn refused to accept no for an answer. *Id.* McGinn continued to send sexually explicit text messages to Plaintiff throughout April 2012. *Id.* ¶¶ 55-57.

In April 2012, Plaintiff received notice that she was not selected for a summer internship at the University and mentioned this to McGinn. *Id.* ¶ 58. Without Plaintiff's permission, McGinn went to speak with the Chair of the Philosophy Department and requested that Plaintiff receive funds from the University for the position. *Id.* McGinn told Plaintiff that she could receive the funding, but she would only receive it if she worked with him. *Id.* Plaintiff felt that she had no other choice but to accept the offer, and accordingly, she was slated to receive $2,000 from McGinn and $2,000 from the Philosophy Department for the position. *Id.* ¶ 59. In May 2012, McGinn continued to pressure Plaintiff to engage in sexual activity with him over the summer. *Id.* ¶¶ 60-69. On May 23, 2012, McGinn called Plaintiff and tried to coerce her into having sex with him. *Id.* ¶ 70. During the conversation, McGinn threatened her and made clear to Plaintiff that his support of her position was contingent upon her acceding to his sexual demands. *Id.* Plaintiff ended the conversation and hung up her phone. *Id.* ¶ 72. McGinn continued to send e-mails and text messages to Plaintiff threatening her and demanding that she

engage in sexual activity with him. *Id.* ¶ 73-76. In September 2012, Plaintiff resigned from her position as McGinn's RA. *Id.* ¶ 77.

On September 14, 2012, Plaintiff believed she was making a formal sexual harassment complaint of McGinn's conduct when she went to speak with the Executive Director and Associate Director of the Office of Equality Administration ("EA") at the University. *Id.* ¶ 78. Plaintiff requested that the EA block all contact between her and McGinn, remove McGinn from any committees judging her academic progress, and provide her with protection from his retaliation. *Id.* ¶ 79. The EA assured Plaintiff that they would follow through with her requests and would arrange for her to have a meeting with the Vice Provost of Faculty Affairs to discuss her complaint. *Id.* ¶ 80. The EA did not inform Plaintiff that there were two methods of filing a complaint. *Id.* ¶ 83-84. The University allocated her complaint to the informal process without her knowledge or consent. *Id.* After the meeting on September 14, 2012, the EA did not take steps to protect Plaintiff from discrimination, harassment, or retaliation. *Id.* ¶ 87.

On September 15, 2012, Plaintiff reported McGinn's sexual harassment to the Chair of the Philosophy Department and the Director of Graduate Studies. *Id.* ¶ 88. On September 27, 2012, Plaintiff met with the Vice Provost of Faculty Affairs to give an account of McGinn's sexual harassment. *Id.* ¶ 89. At the end of the meeting, Plaintiff was told the University would investigate McGinn's conduct, but the University did not request to see all of the communications between Plaintiff and McGinn, did not request to see Plaintiff's cell phone, and did not contact Plaintiff's partner for his account of the events until October 23, 2012. *Id.* ¶¶ 90-92. On October 7, 2012, McGinn e-mailed Plaintiff, informing her that he was removing her name and acknowledgement for her contribution to a book he authored and informed Plaintiff that he was withdrawing a jointly-authored paper from publication. *Id.* ¶ 93. On October 12,

2012, the Vice Provost contacted Plaintiff and wanted to meet with Plaintiff to discuss the findings. *Id.* ¶ 94. On October 19, 2012, Plaintiff met with the EA, and she was informed that McGinn had alleged that Plaintiff had consented to his sexual advances, insinuations, and propositions, and confirmed that by the University's own assessment, McGinn's behavior did not amount to sexual harassment. *Id.* ¶ 95.

On November 30, 2012, Plaintiff received an e-mail from the University, informing her that the University had filed charges against McGinn with the Faculty Senate, but the University was awaiting a response from the Faculty Senate on their decision to move forward on the charges. *Id.* ¶ 96. Unbeknownst to Plaintiff, the charge had been converted into the less serious charge of failure to report a consensual relationship with a student. *Id.* On December 12, 2012, the University informed Plaintiff that the University Faculty Senate would be "bringing charges against the faculty member," but Plaintiff did not receive any further communication from the University about the investigation or any notification of the nature of the charges being brought against McGinn. *Id.* ¶ 97. On December 12, 2012, McGinn responded to this charge by implying that Plaintiff had lied, had stolen money from the University, filed a sexual harassment complaint to divert attention from work that she had not completed, and willingly participated in a relationship with him. *Id.* ¶ 98. Although McGinn's resignation agreement was signed on February 6, 2012, he remained salaried and employed by the University until December 31, 2013. *Id.* ¶ 101. The University failed to require McGinn to enter into any agreement that would prevent McGinn from disclosing confidential information relating to Plaintiff or her complaint or from making derogatory public statements about Plaintiff or her complaint. *Id.* ¶ 103. On April 17, 2013, Plaintiff decided to leave the University and accepted a fellowship at Indiana University. *Id.* ¶ 104.

The University asserted that the relationship between Plaintiff and McGinn was consensual and romantic, notwithstanding Plaintiff's contention that it was not consensual or romantic. *Id.* ¶ 106. McGinn provided his department colleague, Erwin, with a copy of a letter to the Faculty Senate, and Erwin volunteered to assist McGinn in a campaign to protect McGinn's reputation. *Id.* ¶ 108. In April 2013, McGinn wrote letters denying his harassment of Plaintiff and sent them to philosophers around the United States. *Id.* ¶ 110. In the letters, McGinn included Plaintiff's full name and selections of her personal communications with him. *Id.* ¶ 111. In June 2013, McGinn sent another letter to the University faculty and other members of the public and sent a letter to his students and colleagues about Plaintiff and her allegations against him. *Id.* ¶¶ 117-18.

On April 19, 2013, Erwin called a Philosophy Department faculty meeting for the purpose of discussing the rumors surrounding McGinn's resignation. *Id.* ¶¶ 120-21. During the meeting, Erwin stated that Plaintiff and McGinn had been involved in a consensual romantic relationship and McGinn had been harmed by rumors. *Id.* ¶ 121. Furthermore, Erwin named Plaintiff and presented a distorted version of Plaintiff's official complaint against McGinn. *Id.* On April 23, 2013, Erwin called Plaintiff, who was a student in one of his classes, into his office. *Id.* ¶ 124. Erwin began to threaten Plaintiff based upon what she had allegedly "done" to McGinn. *Id.* On April 24, 2013, Erwin sent two e-mails to Plaintiff, threatening her that if she did not help protect McGinn's job and reputation, she could expect to be damaged. *Id.* ¶ 125. Plaintiff did not respond to either of Erwin's e-mails. *Id.* ¶ 126.

After Plaintiff left the University, McGinn and Erwin continued to defame her within the University and beyond. *Id.* ¶ 127. On May 30, 2013, Erwin sent an e-mail to Plaintiff and asked Plaintiff if she had made a complaint to the University as a result of his actions of interrogation

and intimidation that occurred at the meeting between Plaintiff and Erwin on April 23, 2013 and further in the e-mails of April 24, 2013. *Id.* ¶ 130. On June 5, 2013, Erwin sent a letter to the Philosophy Department faculty, stating that: (1) McGinn was not guilty of sexual harassment; (2) "there was no charge of sexual harassment by . . . the student"; (3) "there was also not even a charge of sexual harassment by anyone"; (4) Plaintiff was motivated by a fear of a negative appraisal by McGinn of her work, and therefore, a desire to have McGinn removed from any committee that might judge her work; and (5) the University had conducted an open, transparent, and fair investigation. *Id.* ¶ 131. On June 10, 2013, Erwin e-mailed Plaintiff accusing her of making a complaint about his actions on April 23, 2013 and April 24, 2013, and threatened her with legal action and media exposure. *Id.* ¶ 133.

McGinn has a personal blog on the website Philospot.com, which was active from August 2007 to November 2013. *Id.* ¶ 138. This blog was frequently visited by members of the academic philosophy community. *Id.* Between June and October 2013, McGinn made references to Plaintiff on his blog numerous times, and McGinn posted statements written by Erwin, with his consent. *Id.* ¶ 140. In June through October 2013, McGinn continued to make comments on his blog relating to the allegations that were brought against him. *Id.* ¶¶ 143-157. McGinn continues to make references to Plaintiff and her complaint on his new blog, www.colinmcginn.net. *Id.* ¶ 158. The letters that McGinn sent to his colleagues attracted the attention of national media. *Id.* ¶¶ 161-171.

The University's Equality Administration states as follows:

> In addition to sexual harassment being illegal, it is also against the law to retaliate against someone for complaining about sexual harassment. Retaliation is against the University's policy and any acts of retaliation should be immediately reported to Equality Administration. Retaliation is prohibited by law. Thus the University of Miami will take appropriate

> action to prevent retaliation and to insure [sic] that all parties, including the complainant are protected from harm.

*Id.* ¶ 171. The University was aware of the retaliatory conduct that McGinn and Erwin engaged in toward Plaintiff because of the letters that had been distributed to the faculty. *Id.* ¶ 173. On May 20, 2013, a faculty member in the Philosophy Department wrote a letter to the President of the University, Donna Shalala, and informed her of McGinn and Erwin's retaliatory conduct and requested that President Shalala stop the acts of retaliation by making a formal statement on behalf of the University. *Id.* ¶ 175-76. On June 12, 2013, Plaintiff instructed her attorney to contact the Assistant General Counsel at the University and to ask the University to "take appropriate action to ensure that Dr. McGinn does not retaliate against [Plaintiff], does not disclose publicly [Plaintiff's] identity, and does not otherwise make disparaging statements about [Plaintiff]." *Id.* ¶ 177. The University responded that it would "review" this information and take "necessary steps, if any"; however, the University did not contact Plaintiff or Plaintiff's counsel. *Id.* ¶ 178.

On September 20, 2013, President Shalala held two meetings – one with graduate students in the Philosophy Department and one with faculty and administration – to discuss the events in the Department of Philosophy. *Id.* ¶ 181. At the graduate student meeting, the Provost stated that the University had followed policy and had not done anything wrong throughout the investigation of Plaintiff's complaint. *Id.* ¶ 182. During the meeting, President Shalala confirmed that McGinn had done more than fail to report a consensual relationship, but the University had limited authority "to shut someone up in higher education." *Id.* ¶ 184. When asked why McGinn had not been officially terminated, President Shalala said, "firing would have taken longer." *Id.* ¶ 186. In making statements at the graduate student meeting, President Shalala and the Provost made it clear that the University was aware that McGinn had sexually

harassed Plaintiff and recognized his defamatory statements as retaliation. *Id.* ¶ 188. Nevertheless, the University did not take action against McGinn or Erwin. *Id.*

On October 15, 2015, Plaintiff filed her Complaint, alleging the following claims: (1) Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") – Sexual Harassment as to the University, (2) Violation of Title IX – Hostile Educational Environment as to the University, (3) Violation of Title IX – Retaliation as to the University, (4) Violation of the Florida Civil Rights Act, Fla. Stat. §§ 760.07 and 760.11, *et seq.* ("FCRA") – Sexual Harassment as to the University, (5) Violation of FCRA Retaliation as to the University, (6) Breach of Contract as to the University, (7) Breach of Fiduciary Duty as to the University, (8) Civil Battery as to McGinn and the University, (9) Civil Assault as to McGinn and the University, (10) Intentional Infliction of Emotional Distress as to McGinn and the University, (11) Defamation as to McGinn, Erwin, and the University, (12) Invasion of Privacy by Publication of Private Facts as to McGinn, Erwin, and the University, and (13) Civil Conspiracy as to McGinn, Erwin, and the University. D.E. 1.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a cause of action, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555)).

## **<u>ANALYSIS</u>**

In their Motions to Dismiss, Defendants move to dismiss each of the thirteen (13) claims within Plaintiff's Complaint. D.E. 32, 33, 35. The Court will separately address the arguments pertaining to Plaintiff's claims in turn.

### **1. <u>Counts I, II, III</u>: Violation of Title IX – Sexual Harassment, Hostile Educational Environment, Retaliation**

In its Motion to Dismiss, the University argues that Plaintiff's claims for sexual harassment, hostile educational environment, and retaliation in violation of Title IX are pre-empted by Title VII. D.E. 32. The University asserts that although Plaintiff was both a graduate student and an employee of the University, her Title IX claims arose in the context of her employment as McGinn's RA. *Id.* Therefore, the University argues, Plaintiff may not circumvent Title VII's administrative scheme and proceed under Title IX simply because she failed to exhaust the administrative remedies under Title VII, which would be fatal to her claims. *Id.* In opposition, Plaintiff argues that neither the United States Supreme Court nor the

Eleventh Circuit Court of Appeals have held that Title VII pre-empts Title IX in all circumstances. D.E. 36. Plaintiff asserts that all of the cases relied upon by the University involve plaintiffs who were solely employees of an educational institution where the alleged sexual-discrimination and retaliation claims arose. *Id.* Plaintiff contends that because Plaintiff was both a Ph.D. student who was, at times, concurrently employed by the University, she is entitled to the protections under both Title VII and Title IX, but she has instead opted to pursue her claims through Title IX and the Florida Civil Rights Act ("FCRA"). *Id.*

According to Plaintiff's Complaint, Plaintiff was both a graduate student pursuing a Ph.D. in Philosophy and was employed as a Resident Assistant during the period of the alleged sexual harassment and retaliation. D.E. 1 ¶ 5. The Court agrees with Plaintiff that none of the authorities cited by the University are analogous to the facts of this case, where a plaintiff was concurrently an employee and a student. Based upon the lack of controlling authority and in light of the public policy behind these statutory schemes, the Court takes note of Plaintiff's argument that "[t]o deprive [Plaintiff] of the right to pursue her Title IX claims for the educational detriment she suffered as a result of Defendant's wrongdoing would unfairly punish her for being employed by the same institution where she was also enrolled as [a] student." Accordingly, Defendant's Motion to Dismiss Counts I, II, and III is DENIED.

**2. Count IV: Violation of FCRA – Sexual Harassment**

In its Motion, the University argues that Plaintiff's claim for sexual harassment in violation of the FCRA was untimely. D.E. 32. The University contends that, as alleged by Plaintiff, the sexual harassment occurred between December 2011 and September 2012, and therefore, Plaintiff was required to file her charge with the Florida Commission on Human Relations ("FCHR") within 365 days of September 2012, at the latest. *Id.* Because Plaintiff did

not file her charge until September 8, 2014, the University argues Plaintiff's claim is barred. *Id.* In opposition, Plaintiff contends that the resolution of this issue would require the Court to go beyond the four corners of Plaintiff's Complaint and is improper for resolution at the motion to dismiss stage. D.E. 36.

Based upon this Court's review of the pleadings, Exhibit A to Plaintiff's Complaint explicitly demonstrates that Plaintiff's charge was filed with the FCRA on September 7, 2014. D.E. 5-1. In considering Plaintiff's well-pleaded factual allegations, the alleged sexual harassment occurred while Plaintiff was employed by the University as McGinn's RA. D.E. 1 ¶¶ 208-220. In her own Complaint, Plaintiff alleges that she was employed at the University "from December 2011 to September 2012." *Id.* ¶ 211. Accordingly, under the FCRA, Plaintiff was required to file her charge within 365 days of September 2012, but she failed to do so and thus, her claim is barred. Even assuming that Plaintiff's employment with the University was not terminated until April 17, 2013 when she left the University, Plaintiff's charge was still filed beyond the one-year statutory deadline. *Id.* ¶ 104. Plainly on the face of her Complaint, Plaintiff's charge of sexual harassment/hostile work environment was untimely. Therefore, Count IV claim will be DISMISSED WITH PREJUDICE.

**3. <u>Count V</u>: FCRA - Retaliation**

The University further argues that Plaintiff's charge of retaliation arising under the FCRA was also untimely and is barred because Plaintiff left the University's employment on May 13, 2013, and her charge was not filed with the FCHR until September 7, 2014. D.E. 32. The University insists that such retaliation would have occurred on November 29, 2012, at the latest, when the University's investigation was concluded and the charge brought against McGinn before the Faculty Senate was identified as a failure to report a consensual relationship with a

student. *Id.* ¶ 102. Plaintiff responds that she directly filed a charge and a 270-page Complaint with the FCHR on May 2, 2014, well within the 365-day filing requirement. D.E. 32-3.

In Plaintiff's Complaint, she alleges that she was employed as McGinn's RA from December 12, 2011 to September 11, 2012. D.E. 1 ¶ 224. Furthermore, Plaintiff engaged in a protected activity when she reported the sexual harassment to the EA on September 14, 2012. *Id.* ¶ 227. Based upon the allegations in the Complaint, the University retaliated against Plaintiff by failing to rule that McGinn had sexually harassed her and by failing to protect her from McGinn and Erwin's defamatory and retaliatory statements. *Id.* ¶ 228. Plaintiff alleges that this conduct occurred beyond Plaintiff's resignation from the University on May 13, 2013. *Id.* ¶¶ 208-230. Contrary to the University's representation that McGinn was no longer employed by the University when these statements were made, the Complaint alleges that McGinn tendered his resignation in Spring 2013, but he was still employed by the University in December 2013 (D.E. 1 p. 101) when the defamatory statements were allegedly made. In her Complaint, Plaintiff alleges a number of examples of retaliation and the making of defamatory or invasive statements, from which the University failed to protect Plaintiff and which occurred during the 365-day period leading up to the May 8, 2014 filing date. D.E. 1 ¶¶ 127, 129-157, 161-171. Since the Court is required to accept the allegations as true, the University's argument fails, and its Motion to Dismiss Count V is DENIED.

**4. <u>Count VI</u>: Breach of Contract**

In moving to dismiss Count VI, the University argues that Plaintiff's claim fails to satisfy *Iqbal* and *Twombly* because it lacks sufficient factual allegations to demonstrate the existence of and terms of the University's contract. D.E. 32. Specifically, the University argues that Plaintiff failed to attach a copy of the *Student Rights and Responsibilities Handbook*, and in her

Complaint, Plaintiff failed to identify any specific provision of the Handbook that was allegedly breached by the University. *Id.* Plaintiff asserts that she is not required to attach the student handbook and scholarship award contracts in her Complaint, and regardless, Plaintiff argues that she has alleged sufficient facts from which the University and the Court can readily determine the provisions of the contracts that it allegedly breached. D.E. 36.

In her Complaint, Plaintiff alleges that the University had a contractual duty to Plaintiff as set out in the *Student Rights & Responsibilities Handbook*, which details the University's responsibilities to students. D.E. 1 ¶ 232. Plaintiff specifically alleges that the policies and standards referred to include "the right to be treated equally in academic and social settings, the right to live and/or attend classes in a physically safe environment, the right to privacy, the right to learn without disruption, and the expectation of a positive living/learning environment." *Id.* ¶ 233. Additionally, Plaintiff identifies the ways in which the University breached its contractual duty to Plaintiff. *Id.* ¶ 233. The Court further agrees with Plaintiff that because she identified the specific policies and standards contained within the scholarship-award contract, she was not required to attach the contract. Based upon the Court's review of Plaintiff's Complaint, the Court is satisfied that the allegations are sufficient to state a claim for breach of contract, and the University's Motion to Dismiss Count VI is DENIED.

**5. <u>Count VII</u>: Breach of Fiduciary Duty**

The University argues that, as a matter of law, a college or university does not owe a fiduciary duty to its students solely based upon their status as students. D.E. 32. In opposition, Plaintiff argues that she sufficiently pleaded a fiduciary duty because the University held itself out to adhere to certain policies and standards and to comply with certain policies regarding sexual misconduct, Title IX, and sexual harassment. D.E. 36.

The greater weight of authority appears to support the University's position that a fiduciary duty does not simply arise because of students' status, and this Court agrees. *See, e.g.*, *Knelman v. Middlebury Coll.*, No. 5:11-cv-123, 2012 WL 4481470 (D. Vt. Sept. 28, 2012); *Tunne v. Hendrick*, No. 5:10CV-00181, 2012 WL 3644852 (W.D. Ky. Aug. 24, 2012); *Valente v. Univ of Dayton*, 438 Fed. Appx. 381, 387 (6th Cir. 2011); *Bass ex rel. Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010); *Vurimindi v. Fuqua Sch. Of Bus.*, No. 10-234, 2010 WL 3419568, at *7 (E.D. Pa. Aug. 25, 2010); *Lary v. Wesleyan Univ.*, No. CV0055003943, 2009 WL 865679, at *12 (Conn. Super Ct. Mar. 10, 2009); *Manning v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *10 (E.D. Pa. Dec. 30, 2014); *Hendricks v. Clemson Univ.*, 578 S.E. 2d 711, 715-16 (S.C. 2003); *Shapiro v. Butterfield*, 921 S.W.2d 649, 651 (Mo. Ct. App. 1996). Plaintiff attempts to circumvent this line of case law by arguing that a "special relationship" arose from her "dependency" on the University to handle her complaints of discrimination and retaliation. D.E. 36. But, this reasoning would convert many, if not all, employer/employee relationships into fiduciary relationships, and there is simply no support in the law for such a result. In reviewing the case relied upon by Plaintiff, *Orzechowitz v. Nova SE Univ.*, 2014 WL 1329890, at *3 (S.D. Fla. 2014), the Court does not agree with the Magistrate Judge's reasoning in finding a fiduciary relationship existed, and furthermore, that case is not binding upon the Court. Therefore, Defendant's Motion to Dismiss Count VII is GRANTED. Count VII is DISMISSED WITH PREJUDICE

**6. <u>Counts VIII, IX, X, XI, XII as to the University and McGinn</u>: Battery, Civil Assault, Intentional Infliction of Emotional Distress, Defamation, and Invasion of Privacy**

In moving to dismiss Plaintiff's intentional tort claims, the University's sole argument is that Plaintiff failed to plead sufficient facts to permit the conclusion that the wrongful conduct of

McGinn and Erwin should be imputed to the University. D.E. 32. The University contends that as a matter of law, even accepting as true that McGinn and/or Erwin engaged in the alleged intentional tortious conduct, the University cannot be held vicariously liable for such conduct. *Id.* Plaintiff opposes the University's position and argues that in each of her tort claims, she alleges that the torts occurred within the course of McGinn's employment with the University. D.E. 36. Plaintiff suggests that there is ample case in law in which a motion to dismiss is denied where the tort is related to, or arises out of, sexual harassment or retaliation claims and the pleading alleges that the tort(s) occurred within the employees' scope of employment. *Id.*; *see e.g.*, *Bount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1373 (M.D. Fla. 1996).

In each count, Plaintiff has alleged that each *individual* was acting within the scope of his employment, and Plaintiff's Complaint contains numerous allegations suggesting that the University was deliberately ignorant and/or indifferent to McGinn's and Erwin's alleged misconduct, which allegations, if accepted as true, could support the conclusion that the University sanctioned their misconduct. D.E. 1 ¶¶ 244, 250, 251, 270-71, 280-81. The Court is not persuaded by the University's argument that these counts are not sufficiently pleaded, and therefore, the University's Motion to Dismiss Counts VIII, IX, X, XI, and XII is DENIED.

**7. <u>Count XI as to McGinn and Erwin</u>: Defamation**

In McGinn's Motion to Dismiss, McGinn argues that Count XI should be dismissed because: (1) all statements allegedly made prior to October 15, 2013 are outside the statute of limitations and cannot support a defamation claim; and (2) the statements made by McGinn after October 16, 2013 are not defamatory. D.E. 35. In a similar vein, Erwin argues that Count XI should be dismissed because: (1) eight of the nine statements attributed to Erwin are barred by the statute of limitations, (2) the defamation claim is defectively pleaded because it lumps

McGinn and Erwin together, (3) the substance of Erwin's alleged statements was substantially true, (4) the October 17, 2013 e-mail is a statement of opinion and/or contains no false statement, and (5) the Complaint shows that Erwin was not negligent. D.E. 33.

The parties agree that the statute of limitations is two years pursuant to Florida Statute section 95.031. Plaintiff argues, however, that the statements that pre-date October 15, 2013 are actionable as a part of a "continuing tort," pursuant to the multiple publication rule, because it is reasonable to infer from the facts contained within Plaintiff's Complaint that at least some of the earlier statements were republished within the limitations period. Plaintiff's reliance on the continuing tort doctrine in the defamation context is without precedent, and the Court is unwilling to apply this reasoning to the facts of this case. Furthermore, if Plaintiff truly maintains that there have been republications within the limitations period, she will have to identify the statements that were republished, when, and where to satisfy *Iqbal* and *Twombly*. In reviewing the Complaint, particularly the allegations in paragraphs 139-173, it is clear that a number of the purported statements attributed to McGinn and Erwin occurred prior to October 15, 2013. Therefore, to the extent that Plaintiff relies on statements that predate October 15, 2013, Count XI will be DISMISSED WITHOUT PREJUDICE, and Plaintiff is granted leave to amend her Complaint.

McGinn argues that the October 23, 2013 blog post is not defamatory because it is "pure opinion" and does not identify Plaintiff by name. D.E. 1 ¶¶ 167-171. But, defamation can arise where a statement of opinion reasonably implies false and defamatory facts. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13, 20 (1990). Also, a defamatory communication is made concerning the person to whom the recipient reasonably understands that it was intended to refer. Restatement of Torts 2d § 564. In the post, McGinn refers to "the student ('Nicole')" as a liar

and, arguably, as a "crazed feminist." D.E. 1 ¶¶ 157, 169. It may be McGinn's "opinion" that Plaintiff is a liar, but the statement may also be interpreted as a statement of established fact which, obviously would subject the "student," if identified, to distrust and contempt. As to the fact that the blog post failed to identify Plaintiff by name, McGinn's post directly related to an article published on October 8, 2013 in *Slate* in which, according to the Complaint at paragraph 170, there appeared numerous facts, which would permit any interested person to determine that the student referred to in both the article and the blog post was Plaintiff. D.E. 1 ¶ 170. Assuming the truth of the allegations in Plaintiff's Complaint, they are sufficient to state a defamation claim based upon the October 23, 2013 blog post.

McGinn argues that the January 12, 2015 blog post is not defamatory as a matter of law because it would not have subjected Plaintiff to hatred, distrust, ridicule, contempt, or disgrace. According to the Complaint, McGinn stated in his blog post that he was "in a romantic relationship" with Plaintiff "which is all the University ever accused me of." D.E. 1 ¶ 158. Plaintiff responds that the post implies that Plaintiff falsely accused him, and that the idea that she would have had a consensual relationship with a sixty-one (61) year old professor is degrading and harmful to her academic reputation. The Court is not entirely in agreement with Plaintiff's interpretation of the post, but nevertheless, the Court concludes this statement is actionable because according to the Complaint, McGinn falsely represented that he was in a romantic relationship with Plaintiff, his student, and such false representation could subject the student to ridicule and possibly to contempt or disgrace. D.E. 1 ¶ 158. Additionally, the jury could find that anyone following the controversy would have understood that "the student" was Plaintiff. Therefore, the Court is not persuaded by McGinn's argument that the January 12, 2015 blog post is not actionable.

McGinn argues that the May 4, 2015 blog post is not defamatory as a matter of law because it does not reference Plaintiff and is mere opinion. McGinn wrote in this blog post that he needed "to cultivate [his] image as a creepy old codger with 'dangerous tendencies'" and that the "situation is a complete tragedy for all directly involved," including "the student and her family." D.E. 1 ¶ 159. Although a close call, the Court accepts that for the purposes of resolving the pending motion, a jury could find that this post, in sum and substance, falsely implies McGinn was wrongfully accused by Plaintiff and the post subjected Plaintiff to contempt, distrust, or ridicule.

In his Motion, Erwin argues that all but one of the alleged defamatory statements attributed to him are barred by the statute of limitations. In responding, Plaintiff argues that the statute should not be deemed to begin to run until she first had notice of the publication and that, in the context of his case, the defamatory comments are in the nature of a continuing tort. But, Defendant is correct that defamation does not require notice to Plaintiff for the action to accrue. *See Wagner, Nugent, Johnson, Roth Romano, Erikson & Kupfer, P.A. v. Flanagan*, 620 So. 2d 113, 114-15 (Fla. 1993); *Molenda v. Hoescht Celanese Corp.*, 60 F. Supp. 2d 1294, 1302 (S.D. Fla. 1999), *aff'd* 212 F.3d 600 (11th Cir. 2000). Also, the greater weight of authority appears to be that defamation is not a continuing tort. *See Bloom v. Alvarez*, 498 F. App'x 867, 881 (11th Cir. 2012) ("[E]ach defaming comment would be a separate act."). Accordingly, the only statements attributed to Erwin that survive the statute of limitations are those contained in the October 17, 2013 e-mail addressed to "All Graduate Students," which is summarized at paragraph 137 of Plaintiff's Complaint.

With respect to Erwin's arguments that (1) Plaintiff mischaracterized the October 17, 2013 e-mail; (2) the statements attributed to Erwin were either truth or opinion; and (3) Erwin

was not negligent in making the false statements, the Court agrees with Plaintiff that Erwin is requesting that this Court reach the merits of Plaintiff's claim on a motion to dismiss. D.E. 39. However, in considering the October 17, 2013 e-mail, when it is read in context, it does not appear to be defamatory as a matter of law: Erwin begins by cautioning the graduate students against believing the rumors, including rumors which do not seem to be related to McGinn, and then states that he has inquired as to the truth of a specific rumor relating to McGinn, i.e., whether he was asked to resign from his academic position at Rutgers due to a similar relationship with a graduate student and then quotes the response that he received from the former chair of the Rutgers Philosophy Department. It is a well-established principle of law that where allegedly defamatory statements are open to multiple interpretations, the issue of whether a statement is defamatory and true is one for the trier of fact and dismissal is not appropriate, *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982). Therefore, the Court will dismiss this claim without prejudice and provide Plaintiff an opportunity to identify what statements in the October 17, 2013 e-mail she claims defamed her, whether and how the statements were false, and how the statements injured her. Additionally, Plaintiff must not lump the allegations against McGinn and Erwin together in a single count. Count XI is DISMISSED WITHOUT PREJUDICE.

**8. <u>Count XII as to Erwin and McGinn</u>: Invasion of Privacy**

McGinn moves to dismiss Count XII on the grounds that this claim is mislabeled and is a hybrid of false light invasion of privacy and defamation claims. D.E. 35. In his Motion to Dismiss, Erwin also raises a similar argument. D.E. 33. In opposition, Plaintiff argues that she has stated a claim for invasion of privacy for the offensive publication of private facts about her that McGinn and Erwin publicly revealed on multiple occasions. D.E. 40.

In Count XII, Plaintiff alleges that she has been injured by (a) McGinn's and Erwin's dissemination of private information relating to her, including excerpts from her personal e-mails, her name and other identifying information, to a wide audience of her colleagues and superiors (D.E. 1 ¶¶ 275-76), and (b) McGinn's and Erwin's publication of these false allegations that she had a consensual relationship with McGinn and then made a false complaint against him in anticipation of receiving a poor grade (D.E. 1 ¶ 277). McGinn and Erwin contend that this claim is actually a mislabeled claim for false light invasion of privacy, which is not recognized in Florida primarily because it would be largely duplicative of the defamation tort. *See Jews for Jesus v. Rapp*, 997 So. 2d 1098 (Fla. 2008). Plaintiff insists that she is pursuing a remedy in this claim that is distinct from her defamation claims because the crux of her claim is that the unwarranted disclosure of her name, the contents of correspondence between herself and McGinn, and other identifying information support the conclusion that Plaintiff suffered an injury and the private matters disclosed were not of public concern. D.E. 39, 40. In pleading this claim, however, Plaintiff fails to identify with reasonable specificity the allegations necessary to substantiate this claim.

Accepting Plaintiff's avowals as accurate, Plaintiff's Complaint is deficient pursuant to *Iqbal* and *Twombly* because the allegations are wholly conclusory and fail to identify with reasonable specificity the true facts which she says were disclosed and which would have been offensive to a reasonable person. Although Plaintiff should be granted leave to amend to cure the conclusory nature of her allegations, the Court agrees with McGinn and Erwin that this claim cannot be used to re-package her time-barred defamation claims to re-assert the defamation claims that are timely pleaded. Accordingly, Count XII is DISMISSED WITHOUT PREJUDICE.

**9. Count XIII: Civil Conspiracy**

In its Motion to Dismiss, the University argues that the intra-corporate conspiracy doctrine bars the claims because, as a matter of law, the University cannot conspire with its employees, McGinn and Erwin. D.E. 32. Specifically, the University argues that Morrison incorporates her prior allegations of defamatory conduct and alleges in this count that the instances of defamation on the part of McGinn and Ewing set forth in her complaint "constitute a cause of action against all Defendants for civil conspiracy." D.E. 1 ¶ 285. Plaintiff insists that the civil conspiracy claims are brought against McGinn and Erwin in their individual capacities, not in their capacities as agents of the University, and should succeed against the University to the extent that any of McGinn and Erwin's tortious acts are found not to have been performed in the scope of their employment. D.E. 36.

According to the very authorities cited by the University, the intra-corporate doctrine applies when the employees are acting within the scope of their employment. *See Tillman v. Orange Cty., Fla.*, 519 Fed. Appx. 632, 636 (11th Cir. 2013) (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1260-61 (11th Cir. 2010)). There is an issue on the face of the pleadings as to whether McGinn and Erwin were acting within the scope of their employment when the alleged misconduct occurred, and therefore, the issue cannot be decided at the motion to dismiss stage. However, as pleaded, Plaintiff's claim for civil conspiracy is conclusory, and therefore, it fails under the *Iqbal* and *Twombly* standard. To state a claim, Plaintiff will be required to re-plead the scope of the conspiratorial agreement, the objects of the conspiracy, when the agreement was entered into, the identity and role of each participant, and the capacity in which each participant acted. *See, e.g., Julin v. Chiquita Brands Internat'l, Inc.*, 690 F. Supp. 2d 1296, 1131. Accordingly, Count XIII is DISMISSED WITHOUT PREJUDICE.

ORDERED AND ADJUDGED that University of Miami's Motion to Dismiss (D.E. 32) is GRANTED IN PART and DENIED IN PART. University of Miami's Motion to Dismiss Count I, II, III, V, VI, VIII, IX, X, XI, and XII are DENIED. Counts IV and VII are DISMISSED WITH PREJUDICE. Count XIII is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend Count XIII in accordance with this Order.

ORDERED AND ADJUDGED that Motion to Dismiss the Complaint by Defendant Edward Erwin (D.E. 33) is GRANTED IN PART and DENIED IN PART. Counts XI, XII, and XIII are DISMISSED WITHOUT PREJUDICE. Edward Erwin's Motion to Dismiss Count X is DENIED. Plaintiff is granted leave to amend Counts XI, XII, and XIII in accordance with this Order.

ORDERED AND ADJUDGED that Defendant, Colin McGinn's Motion to Dismiss Counts X, XI, XII, and XIII of Complaint (D.E. 35) is GRANTED IN PART and DENIED IN PART. Counts XI, XII, and XIII are DISMISSED WITHOUT PREJUDICE. Colin McGinn's Motion to Dismiss Count X is DENIED. Plaintiff is granted leave to amend Counts XI, XII, and XIII in accordance with this Order.

ORDERED AND ADJUDGED that Plaintiff SHALL re-file her Complaint, if she wishes, to correct the deficiencies addressed in this Order by **Friday, <u>February 5, 2016</u>**. Defendants SHALL file their Responses to Plaintiff's Complaint by **Friday, <u>February 19, 2016</u>**.

DONE AND ORDERED in Chambers at Miami, Florida, this _19th_ day of January, 2016.

Ursula Ungaro

UNITED STATES DISTRICT JUDGE

cc:
counsel of record via cm/ecf